IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOSE D. BEZAREZ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ. No. 12-587-SLR |
| | ) |
| DAVID PIERCE, Warden, and | ) |
| ATTORNEY GENERAL OF | ) |
| THE STATE OF DELAWARE, | ) |
| | ) |
| Respondents.[1] | ) |

Jose D. Bezarez. Pro se petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

**MEMORANDUM OPINION**

May 29, 2015
Wilmington, Delaware

---

[1] Warden David Pierce has been substituted for former Warden Perry Phelps, an original party to this case. See Fed. R. Civ. P. 25(d).

ROBINSON, District Judge

## I. INTRODUCTION

Currently before the court is Jose D. Bezarez's ("petitioner") application for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 ("application"). (D.I. 2) For the reasons that follow, the court will deny petitioner's § 2254 application.

## II. FACTUAL BACKGROUND[2]

On the evening of February 24, 2007, petitioner and his partner, "Dolte," were visiting at Audrey Harris's house. The two men were watching movies and playing video games with several children, including petitioner's fifteen year old "godson," Darren Hunt, and Darren's fourteen year old brother, Day-Von Hunt. At some point, the Hunt brothers, petitioner, and Dolte went out to get food and conduct business. Petitioner took his gun along for protection, but someone else was holding it for him.

Petitioner sold $6,500 in drugs and also spent some time getting high. As the two men and two boys were walking through the parking lot of the Tu Rancho Jubilee restaurant, petitioner saw Michael, Ramon, and Maximo Campusano. Petitioner had purchased $11,000 of "bad" cocaine from the Campusanos in early January. Since then, petitioner had been trying to get his money back, but the Campusanos were avoiding him. Petitioner and his companions confronted the Campusanos. Petitioner waved his gun at them and spoke to the Campusanos in Spanish. According to Ramon, petitioner told them to give him their money and everything they had. The Campusanos put their hands up and petitioner instructed the Hunt brothers to "check" them. Day-Von

---

[2]The facts are summarized from the Delaware Supreme Court's decision on direct appeal. *See Bezarez v. State*, 983 A.2d 946 (Del. 2009).

took a cell phone and wallet from Michael, and another Campusano gave Darren twenty dollars without being searched.

Maximo reportedly told petitioner that he was not going to give petitioner anything. While the two were talking, Maximo tried to grab petitioner's gun. During the ensuing struggle, Maximo was shot twice and died. Petitioner explained that the gun was cocked when someone else handed it to him, and that the "trigger was so light . . . that it just went off." *Bezarez*, 983 A.2d at 947. Petitioner denied ever having fired the gun before that night. He also told the police that he purchased the gun one or two days before the shooting.

## III. PROCEDURAL BACKGROUND

In October 2008, a Delaware Superior Court jury found petitioner guilty of first degree intentional murder, first degree felony murder, first degree robbery, two counts of attempted first degree robbery, second degree conspiracy, and five counts of possession of a firearm during the commission of a felony. *See Bezarez v. State*, 44 A.3d 921 (Table), 2012 WL 1390247, at *1 (Del. Apr. 20, 2012). The Superior Court sentenced petitioner to two life sentences plus substantial additional time at Level V incarceration. *Id.* The Delaware Supreme Court affirmed petitioner's convictions and sentence on direct appeal. *See Bezarez*, 983 A.2d at 949.

In October 2010, petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), which the Superior Court denied. *See Bezarez*, 2012 WL 1390247, at *1. Petitioner appealed, and the Delaware Supreme Court affirmed the Superior Court's decision. *Id.* at *2.

2

Thereafter, petitioner filed a timely § 2254 application in this court. (D.I. 2) The State filed an answer, asserting that the application should be denied in its entirety. (D.I. 10)

## IV. STANDARD OF REVIEW

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); see also Williams v. Taylor, 529 U.S. 362, 412 (2000); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. Thomas v. Horn, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 784-85 (2011).

Additionally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## V. DISCUSSION

Petitioner's application asserts the following four grounds for relief: (1) the trial court abused its discretion in admitting extrinsic evidence of petitioner's prior bad act; (2) defense counsel provided ineffective assistance by failing to request a jury instruction regarding accomplice testimony credibility; (3) defense counsel provided ineffective assistance by failing to object when the trial court permitted a non-court-certified interpreter to translate two out-of-court witness statements, and appellate counsel provided ineffective assistance by failing to raise the issue of the non-certified interpreter/statements on direct appeal; and (4) defense counsel was ineffective for failing to object to the State's use of a police detective's translation of two witnesses' prior out-of-court statements. The Delaware Supreme Court denied claim one on direct appeal, and denied claims two, three and four on post-conviction appeal. Therefore, habeas relief will only be available if the Delaware Supreme Court's decisions were contrary to, or involved an unreasonable application of, clearly established federal law.

4

## A. Claim One: Trial Court Improperly Admitted Prior Bad Act Evidence

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Consequently, a federal habeas court cannot re-examine state court determinations on state law issues, and claims based on errors of state law are not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67-8 (1991); Pulley v. Harris, 465 U.S. 37, 41 (1984).

In claim one, petitioner contends that the Superior Court abused its discretion in admitting extrinsic evidence of a prior bad act.[3] Notably, the argument petitioner presented to the Delaware Supreme Court on direct appeal only asserted claim one in terms of a violation of Delaware evidentiary law, and his instant application also only asserts claim one as a violation of state evidentiary law. In other words, claim one does not contend that the aforementioned alleged violation of state evidentiary law violated petitioner's federal constitutional rights. As such, the court will deny claim one for presenting an issue that is not cognizable in a federal habeas proceeding. See, e.g., McLaughlin v. Carroll, 270 F. Supp. 2d 490, 514 (D. Del. 2003); Bright v. Snyder, 218 F. Supp. 2d 573 (D. Del. Aug. 12, 2002).

## B. Claims Two, Three, Four: Ineffective Assistance of Counsel

The clearly established law governing the instant ineffective assistance of counsel claims is the two-pronged standard enunciated by Strickland v. Washington, 466 U.S. 668 (1984) and its progeny. See Wiggins v. Smith, 539 U.S. 510 (2003).

---

[3]To rebut petitioner's contention that he purchased the gun involved in Maximo Campusano's death only one or two days before the shooting on February 24, 2007, the State introduced evidence that petitioner had fired the same gun into the floor of his mother's apartment on February 3, 2007. See Bezarez, 983 A.2d at 947.

5

Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

Claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to trial counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). An attorney's decision about which issues to raise on appeal are strategic,[4] and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745 (1983); *Smith v. Robbins*, 528 U.S. 259, 272 (2000).

Finally, in order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

In this case, the Delaware Supreme Court applied the *Strickland* standard when it affirmed the Superior Court's denial of claims two, three, and four. *See Bezarez*, 2012

---

[4] *See Albrecht v. Horn*, 485 F.3d 103, 138 (3d Cir. 2007); *Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999)(counsel is afforded reasonable selectivity in deciding which claims to raise without the specter of being labeled ineffective).

6

WL 1390247, at *2. n.9. Thus, the Delaware Supreme Court's decision was not contrary to clearly established federal law. See Williams, 529 U.S. at 406.

The court must also determine if the Delaware Supreme Court's denial of claims two, three, and four as meritless involved a reasonable application of Strickland. When performing this inquiry, the court must review the Delaware Supreme Court's decision with respect to petitioner's ineffective assistance of counsel claims through a "doubly deferential" lens. Harrington, 131 S.Ct. at 105-06. In other words, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

### 1. Claim two: trial counsel did not request a *Bland* jury instruction on accomplice testimony

In claim two, petitioner contends that trial counsel was ineffective for failing to request a *Bland*[5] jury instruction regarding accomplice testimony credibility. After reviewing petitioner's instant argument in context with the record, the court concludes that the Delaware Supreme Court reasonably applied Strickland in denying this argument. In *Bland*, the Delaware Supreme Court held that a jury must be instructed to use special caution when weighing uncorroborated accomplice testimony. See *Bland*, 263 A.2d at 288. However, in petitioner's case, there was substantial corroborating evidence of the shooting, and the State did not rely significantly on uncorroborated testimony of petitioner's accomplices. (D.I. 12 Appellant's Op. Br. in *Bezarez v. State*, No. 416,2011, at C11) For instance, petitioner's defense at trial was that the gun discharged accidentally as he struggled with the victim, Maximo Campusano, and that

---

[5]*Bland v. State*, 263 A.2d 286, 288 (Del. 1970).

7

he did not intend to shoot Maximo. During petitioner's trial, the two Hunt brothers[6] testified that the gun went off while petitioner struggled with the victim and that there had been no plan to rob or kill the victim prior to his death. This testimony, which was consistent with petitioner's testimony, was corroborated by: (1) surveillance video depicting the incident; (2) non-accomplice eyewitness testimony from Ramone Campusano that Maximo Campusano was shot during a struggle with petitioner over the gun; and (3) petitioner's confession. Id.

Given the existence of this corroborative evidence, the Delaware Supreme Court denied the instant ineffective assistance of counsel claim because petitioner could not show any prejudice as a result of defense counsels' failure to request a Bland instruction. See Bezarez, 2012 WL 1390247, at *2. In this proceeding, after considering the fact that the State provided substantial corroborative evidence supporting the Hunt brothers' testimony that the gun went off while petitioner was struggling with Maximo, the court concludes that the Delaware Supreme Court's ruling was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 131 S.Ct. at 786. Accordingly, the court will deny claim two for failing to satisfy § 2254(d).

---

[6]Darren and Day-Von Hunt were petitioner's two "accomplices." The Hunt brothers were initially indicted on charges of capital murder and robbery. (D.I. 12, Appellant's Op. Br. in Bezarez v. State, No.416,2011, at 5 n.1) They subsequently entered guilty pleas to second degree robbery and second degree conspiracy and, according to petitioner, their plea agreements required them to testify during his trial. (D.I. 12, Appellant's Op. Br. in Bezarez v. State, No.416,2011, at 5, n.1)

8

### 2. Claims three and four: trial counsel failed to object when the trial court permitted uncertified interpreters to translate the out-of-court statements of two witnesses, and appellate counsel failed to raise the issue of the uncertified interpreters and resulting translated witness statements on direct appeal

Two witnesses, Ramon Campusano and Johnny Edwardo Perez Jose[7] gave prior out-of-court videotaped statements in Spanish to a Spanish speaking Wilmington police detective. During petitioner's trial, the State presented the police detective's transcription of the two statements; however, the detective was not a certified interpreter. Additionally, although defense counsel employed an independent interpreter to transcribe the two out-of-court statements, defense counsel discovered during the trial that the interpreter had not been certified at the time of the transcription; rather, the interpreter had only been provisionally approved pending a final certification test.

In claim three, petitioner contends that defense counsel provided ineffective assistance by failing to object when the trial court permitted the uncertified interpreter to translate the two out-of-court-statements. Petitioner also asserts that appellate counsel was ineffective for failing to raise the issue of the uncertified interpreter on direct appeal. In claim four, petitioner contends that trial counsel provided ineffective assistance by failing to object when the trial court permitted the police detective to translate the two out-of-court statements.

The Delaware Supreme Court denied both of these allegations on post-conviction appeal as factually baseless after determining that: (1) neither party utilized Johnny Edward Perez Jose's statement during the trial; and (2) the two translations of

---

[7]Johnny Edwardo Perez Jose was a parking lot attendant at Tu Rancho Jubilee.

Ramon Campusano's statement (one by the police detective and one by the uncertified interpreter) were only used to cross-examine the robbery victim during the trial; the translated statements were not admitted into evidence. *See Bezarez*, 2012 WL 13900247, at *3; (D.I. 12 Appellant's Op. Br. in *Bezarez v. State*, No. 416,2011, at C12)

In this proceeding, petitioner has not provided any clear and convincing evidence to rebut the Delaware Supreme Court's factual finding that the two out-of-court translated statements were not admitted during petitioner's trial. As such, the court presumes the Delaware Supreme Court's factual finding to be correct. Additionally, petitioner has not identified any portion of either of the two witness statements as being incorrectly translated by the police detective or the interpreter. Given these circumstances, petitioner cannot establish that he was prejudiced by his defense and appellate counsels' failure to object that translations of the two out-of-court statements were performed by uncertified interpreters. Accordingly, the court will deny claims three and four for failing to satisfy § 2254(d).[8]

## VI. PENDING MOTION

Petitioner recently filed a motion to voluntarily dismiss his application, stating that he wishes to return to the Delaware state courts to raise additional ineffective assistance of counsel claims as well as claims concerning the "scandal at the Office of the Chief Medical Examiner." (D.I. 18 at 1) The State filed a response in opposition, contending that dismissing the instant application without prejudice would result in unfair

---

[8]To the extent claim three also alleges that the trial court erred for permitting an uncertified interpreter to translate the out-of-court statements of the two witnesses, the court will deny the claim as meritless because neither of the two translations were admitted into evidence during petitioner's trial.

prejudice and defeat the purpose of Federal Rule of Civil Procedure 41(a)(2). (D.I. 19 at 2)

Pursuant to Federal Rule of Civil Procedure 41(a), if an answer or motion for summary judgment has been served, the plaintiff no longer has the right to automatically dismiss his case. Rather, a motion for voluntary dismissal under Fed. R. Civ. P. 41(a)(2) lies within the sound discretion of the court. See Ferguson v. Eakle, 492 F.2d 26, 28 (3d Cir. 1974).

When reviewing a Rule 41(a)(2) motion to dismiss, or deciding whether a dismissal under Rule 41(a)(2) should be with prejudice, the court must consider the prejudice to the defendant, which includes both legal prejudice and litigation expenses. See Schandelmeier v. Otis Div. of Baker-Material Handling Corp., 143 F.R.D. 102, 103 (W.D. Pa. 1992). Relevant factors to be considered include: (1) the excessive and duplicative expense of a second litigation; (2) the effort and expense incurred by the defendant in preparing for trial; (3) the extent to which the current suit has progressed; (4) the plaintiff's diligence in bringing the motion to dismiss and explanation thereof; and (5) the pendency of a dispositive motion by the non-moving party. Id.

In this case, because the State has already filed its answer to petitioner's application, the court construes the pending motion for dismissal as filed pursuant to Federal Rule of Civil Procedure 41(a)(2). See Fed. R. Civ. P. 41(a)(1)(A)(i)("plaintiff may dismiss an action without a court order by filing [] a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment"); Fed. R. Civ. P. 41(a)(2)("Except as provided by Rule 41(a)(1), an action may be dismissed at

11

the plaintiff's request, on terms that the court considers proper."). Although the Third Circuit has not explicitly addressed the application of Fed. R. Civ. P. 41(a)(2) to federal habeas proceedings, applying Rule 41(a)(2) to the instant case is consistent with decisions from other circuit courts, as well as with Rule 12 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254. *See Barron v. Snyder*, 2001 WL 65735, at *1 (D. Del. Jan. 10, 2001) (collecting cases).

After reviewing petitioner's motion pursuant to the principles articulated above, and given the advanced state of this proceeding, the court finds that petitioner has not presented a strong enough case for dismissal. Petitioner filed the instant motion long after the State filed its answer, and almost one full year after the Delaware State Police and the Delaware Department of Justice issued a preliminary report in June 2014 regarding the "systemic operational failings of the [Controlled Substances Unit of the DME's Office]" revealing "51 pieces of potentially compromised evidence at the CSU, stemming from 46 cases **between 2010 and 2013**." *Biden: Investigation of State Medical Examiner's Drug Lab Reveals Systemic Failings, Urgent Need for Reform*, Dep't of Justice, Att'y Gen.'s Website (June 19, 2014), http://news.delaware.gov/ (emphasis added). Petitioner has not explained the undue delay in filing the instant request, and he has failed to articulate the basis of any additional claim for relief that he wishes to pursue in state court. In addition, the State has invested both time and resources in preparing and filing the answer and the state court record, and will suffer time and prejudice in addressing a second § 2254 application if one is filed at a later date.

Finally, the court notes that granting petitioner's motion to dismiss would effectively end his opportunity to obtain federal habeas relief. Even if the court were to dismiss the application without prejudice and petitioner were to file another one, the new application would be considered untimely. See 28 U.S.C. § 2244(d).

For all of these reasons, the court will deny petitioner's motion to voluntarily dismiss his application without prejudice. (D.I. 19 at 2-5)

## VII. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 application, the court must also decide whether to issue a certificate of appealability. See 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The court has concluded that petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 should be denied. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## VIII. CONCLUSION

For the reasons stated, petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.

13